UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:03CV-192-R

PAT OSBORN                                                                                          PLAINTIFF

v.

BARRY HALEY, individually
GAYE LUBER (n/k/a/ Gaye Verdi)
LAND BETWEEN THE LAKES ASSOCIATION, INC.                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Motion to Dismiss, Renewed, of Defendants Gaye Verdi (f/k/a/ Gaye Luber) and Land Between the Lakes Association (LBLA) (Docket #46). The Plaintiff Pat Osborn has responded (Docket #52), and the Defendants have replied (Docket #53). This matter is ripe for adjudication. For the following reasons, the Defendants' Motion is **GRANTED**.

## BACKGROUND

The Plaintiff, Pat Osborn ("Osborn") worked for the Defendant LBLA, a private company which performs services fro the United States Forest Service, as a volunteer coordinator between January 2001 and June 2002. While employed at LBLA, Osborn applied for a trainee position with the Forest Service. Osborn is a veteran, and as such was entitled to a five-point veteran-hiring preference when applying for federal jobs. Osborn did not receive the job.

The Defendant Barry Haley ("Haley") was the senior management representative of the local Forest Service office where Osborn sought employment, and was responsible for the Service's hiring process. At a meeting of LBLA employees on May 20, 2002, Haley announced the person who got the job that Osborn sought. Osborn questioned his failure to inform her

before the meeting started, and made a joke at his expense.  During the next week, Osborn's supervisor told her to apologize to Haley; she refused.

On June 11, 2002, Osborn filed a complaint with the United States Department of Labor, asking the Department to investigate whether the Forest Service, in its hiring decision, had given appropriate consideration to the veterans' preference points to which she was entitled.  The Department's investigator, Robert Kuenzli, spoke with Haley on June 17.  During that conversation, Kuenzli disclosed that Osborn had filed a complaint.  Kuenzli ultimately concluded that the hiring procedure had been handled correctly.  He informed Osborn of this conclusion, and she then asked him to close her complaint.

That same day, LBLA's executive director, Defendant Gaye Verdi ("Verdi"), summoned Osborn to her office and asked that she apologize to Haley for "not being a good Forest Service partner."  Osborn again refused.  Two days later, Verdi discharged Osborn from her employment with LBLA.

In June 2003, Osborn filed suit, pro se, against Haley, Verdi, and LBLA in state court.  She alleged that Haley tortiously interfered with her employment relationship with LBLA and conspired to cause her wrongful discharge. Specifically, she charged that Haley maliciously induced Verdi to fire her, and that Haley did so in retaliation for Osborn's Department of Labor complaint requesting a veterans' preference inquiry.  She also alleged that Verdi discharged her in retaliation for filing the complaint.

In response, the United States Attorney invoked the Westfall Act, 28 U.S.C. §2679, and certified on behalf of the Attorney General that Haley had been acting within the scope of his employment at the time of the incident giving rise to Osborn's allegations.  The United States

then removed the suit to this Court and filed a Notice of Proposed Substitution for Haley, as well as a motion to dismiss for failure to state a claim.

The Court declined to accept the notice of substitution, determined that the United States was not a proper party in this case, and remanded the case to state court. The United States appealed to the United States Court of Appeals for the Sixth Circuit, which vacated this Court's denial-of-substitution and remand orders. The case was then appealed to the United States Supreme Court, which affirmed the judgment of the Sixth Circuit.

Prior to the commencement of the appellate process, Defendants Verdi and LBLA had filed a Motion to Dismiss Osborn's claims against them, and the motion was fully briefed. However, their motion was stayed while the issue of the United States' substitution for Haley was appealed. Once the case was remanded back to this Court, Defendants Verdi and LBLA renewed their Motion to Dismiss.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.

2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

The Plaintiff's complaint sets forth the following claims against Defendants LBLA and Verdi: (1) wrongful discharge in violation of Kentucky public policy; (2) conspiracy to effect a wrongful discharge (with the federal Defendant Haley); (3) conspiracy to interfere with employment relationship (with the federal Defendant Haley); (4) outrageous conduct; and (5) conspiracy to commit the tort of outrage (with the federal Defendant Haley).

### 1. Wrongful Discharge in Violation of Kentucky Policy; Conspiracy to Effect a Wrongful Discharge

The Plaintiff alleges that she was terminated from her employment at LBLA because she requested a Department of Labor inquiry into whether or not her status as a veteran was properly considered when she applied for a position with a third-party, the United States Forest Service. She does not claim that her veteran status was improperly considered or that she was improperly denied the Forest Service job; instead, her claims center on the Defendants' reaction to the fact that she made an inquiry at all. The Defendants LBLA and Verdi have moved to dismiss the Plaintiff's claims against them arising from this termination, arguing that her claims are not actionable under Kentucky law.

The Plaintiff was employed by LBLA as an at-will employee. Under Kentucky law, the "terminable-at-will" doctrine provides that "'an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.'"

*Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985) (quoting *Firestone Textile Co. Div. v. Meadows, Ky.*, 666 S.W.2d 730, 731 (Ky. 1984)). There are three exceptions to the terminable-at-will doctrine in Kentucky, allowing a terminated at-will plaintiff to bring a wrongful discharge action against his or her former employer. *Id.* at 401.

> These three exceptions are:
>
> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
>
> 2) That policy must be evidenced by a constitutional or statutory provision.
>
> 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.*; *see also Firestone*, 666 S.W.3d at 732.

Further, there are "only two situations...where 'grounds for discharging an employee are so contrary to public policy as to be actionable' absent 'explicit legislative statements prohibiting the discharge.'" *Id.* at 402 (adopting the position of the Michigan Supreme Court in *Suchodolski, v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1981)). They are:

> (1) where the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of his or her employment; and
>
> (2) where the alleged reason for the discharge was the employee's exercise of a right conferred by well-established statute.

*Id.* (quoting *Suchodolski*, 316 N.W.2d at 711-12). Any statute used to support a wrongful termination claim must be directed at providing statutory protection to the plaintiff in her employment situation, and "the concept of employment-related nexus is critical." *Id.*

In addition, "this public policy exception has been found not to apply to public policy enunciated in federal law." *Clark v. Sanofi-Synthelabo, Inc.*, 489 F.Supp.2d 759, 771 (W.D. Ky.

5

2007) (citing *Shrout v. TFE Group*, 161 S.W.3d 351, 354 (Ky. Ct. App. 2005)).  The "underpinning" of a wrongful discharge claim is KRS 446.070, which "extends a right of action only for the violation of a Kentucky statute or a constitutional provision. The protection does not extend to the violation of a federal regulation." *Shrout*, 161 S.W.3d at 355.  Further, the wrongful discharge exception to the terminable-at-will doctrine does not apply if the statute that creates the public policy exception also provides the civil remedy and/or the structure for pursuing the claim; the aggrieved party is limited to that remedy.  *Grzyb*, 700 S.W.2d at 401 (citing *Trembath v. St. Regis Paper Co.*, 753 F.2d 603 (7th Cir. 1985); *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir. 1984); *Zywicki v. Moxness Products, Inc., Div. of Versa Tech.*, 610 F. Supp. 50 (D.C. Wis. 1985); *McCluney v. Jos. Schlitz Brewing Co.*, 489 F. Supp. 24 (E.D. Wis. 1980)); see *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 591 (W. D. Ky. 2004)

    As noted above, absent an explicit legislative statement prohibiting the discharge, only two situations exist where an employee in Kentucky may maintain a wrongful discharge action against her former employer. *Grzyb*, 700 S.W.2d at 402.  One of these situations involves the discharge of the employee for her refusal to violate a law in the course of employment, which is clearly not implicated here as the Plaintiff has made no such arguments or pointed to any evidence supporting such a claim.  *Id.*  The other situation is where the alleged reason for the discharge was the employee's exercise of a right conferred by well-established statute, if that statute is directed at providing statutory protection to the employee in her employment situation. *Id.*

    Therefore, the Plaintiff may only maintain her claims against LBLA and Verdi if she can

establish that reason for her termination was her exercise of a right conferred by a well-established Kentucky statute or constitutional provision directed at providing protection to an employee in her employment situation.  *Clark*, 489 F.Supp.2d at 771.

The Plaintiff cited no Kentucky statutes or constitutional provisions in her complaint, but in an attempt to save her claims, the Plaintiff now cites KRS § 18A.150 and KRS § 40.310, claiming they show "a well-defined public policy in Kentucky that veterans be allowed to enforce all claims, privileges and rights to which they are entitled under federal, state, and local laws."  KRS Chapter 18A sets forth Kentucky's merit system for state employment.  KRS § 18A.010 (2008).  KRS § 18A.005 provides the method in which veterans preference points must be added to the state-employment entrance examination scores for different categories of veterans.  This provision has no bearing on an individual applying for a federal government position.

Even assuming *arguendo* that KRS § 18A.010 evinces a well-defined Kentucky public policy that veterans should be properly awarded their preference points, the Plaintiff has not alleged that the Forest Service failed to award her the proper preference points.  Instead, she alleges that she was terminated in retaliation for filing an inquiry with the Department of Labor.  Chapter 18A has no provisions establishing a right to file a complaint alleging that preference points were inappropriately applied to the a person's state examination for state employment.

Thus, not only does it make little sense to discuss a Kentucky statute that could not have possibly had any affect on the Plaintiff's employment application for a federal government position, the Plaintiff has no claim at all that her veterans preference points were improperly awarded.   There is no right embodied in KRS § 18A.010 directed at providing protection to an

employee in the Plaintiff's employment situation. *Clark*, 489 F.Supp.2d at 771.

KRS § 40.310 sets forth the duties of the Kentucky Department of Veterans Affairs. KRS § 40.310 (2008). This section is entitled "Duties of Department of Veterans Affairs" and, as the title implies, charges the Department with its various duties in the state of Kentucky. It provides no rights to individual veterans. Therefore, the Plaintiff cannot use KRS § 40.310 to establish a claim that she was terminated for exercising a right directed at providing protection to an employee in her employment situation. *Clark*, 489 F.Supp.2d at 771.

For these reasons, the Plaintiff's claims of (1) wrongful discharge in violation of Kentucky policy and (2) conspiracy to effect a wrongful discharge must be dismissed because they do not fit within Kentucky's narrow wrongful discharge exception to the terminable-at-will doctrine.

**2. Conspiracy to Interfere with Employment Relationship**

The Plaintiff also alleges that Defendant Verdi, along with the federal defendant Haley, "conspired to interfere with plaintiff's employment relationship with LBLA and bring about plaintiff's discharge." In her complaint, the Plaintiff alleges that "the malicious, oppressive, and intentional conduct of [Verdi] was committed when acting within the scope of her employment as Executive Director of LBLA."

In her response to the Motion to Dismiss, the Plaintiff backtracks from this statement, and argues that the Defendants should not prevail on their motion to dismiss simply because of the scope of employment conclusion contained in her complaint. However, this matter is before the Court upon a Motion to Dismiss, and the Court therefore must accept all of the allegations in the complaint as true. The Plaintiff's claims against the Defendants are those set forth in her

complaint; the complaint has not been amended, and it is Plaintiff's contention that Verdi was acting within the scope of her employment when she allegedly conspired to interfere with the Plaintiff's employment relationship.

The Defendants correctly argue that neither Verdi nor LBLA can be liable in tort for "interfering" or "conspiring to interfere" with their own employment relationship with the Plaintiff.

To recover for tortious interference with employment, "a plaintiff must prove the existence of a valid contract." *Smith v. Caterpillar, Inc*., 2007 U.S. Dist. LEXIS 1532 , at *10 (E. D. Ky. Jan. 8, 2007) (citing *CMI, Inc. v. Intoximeters, Inc*., 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)). However, at-will employments have no such contracts. *Id.* Moreover, even assuming that the Plaintiff was not an at-will employee and did have such a contract, "a party cannot interfere with the performance of its own existing contract." *Id.* Therefore, LBLA cannot be held liable for conspiring to interfere with the Plaintiff's employment because, even if the Plaintiff did have a definable employment contract, LBLA would have been a party. As an agent of LBLA, Verdi is similarly absolved from this claim. *See id.* at *10-11.

Alternatively, in the response to the Motion to Dismiss, for the first time the Plaintiff argues that if the scope of employment issue is dispositive, she wishes to amend her complaint to assert an alternative claim that Defendant Verdi was acting outside the scope of her employment when she terminated the Plaintiff's employment.

According to the Plaintiff's newly asserted alternative position, Verdi,  LBLA's Executive Director in charge of hiring and firing, could be held independently liable for the same termination for which the corporation, acting through the same individual as an agent, cannot be

9

held liable as a matter of law. This argument is illogical. In addition, in regard to issues of employment, Verdi, as Executive Director of LBLA, was acting within the scope of her employment as alleged in the Plaintiff's complaint.

Therefore, the Plaintiff's claim against Defendants LBLA and Verdi for conspiracy to interfere with her employment relationship must be dismissed.

### 3. Outrageous Conduct; Conspiracy to Commit the Tort of Outrage

The Plaintiff claims that Defendant Verdi's conduct towards her was outrageous and caused her severe emotional distress. Kentucky courts have "set a high threshold for outrage claims," *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004), and in Kentucky, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Kentucky, Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

A prima facie case of outrage requires that the Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer*, 151 S.W.3d at 788 (citing *Seitz,* 796 S.W.2d at 2-3). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (citing Restatement (Second) of Torts § 46(1) cmt. h (1965)).

Kentucky courts have refused to entertain a claim of outrage in many cases that alleged much more serious conduct than that alleged by the Plaintiff, who simply claims that she was terminated for filing an inquiry regarding her veterans preference points with a thrid-party employer, the Department of Labor. The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996)

For example, Kentucky courts have found nothing to support a claim of outrage where the defendant:

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiffs property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital"; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiffs wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife.

*Stringer*, 151 S.W.3d at 790-91 (internal citations omitted).

As previously discussed, the Plaintiff was an at-will employee, and could be terminated at any time "for good cause, for no cause, or for a cause that some might view as morally indefensible," subject to the aforementioned inapplicable wrongful discharge exception. *Grzyb*, 700 S.W.2d at 400. The Supreme Court of Kentucky has recognized "that an employer's conduct in connection with the termination of an employee can constitute outrageous conduct,"

but the Defendants' action of terminating the Plaintiff does not begin to approach the type of outrage claims that have been found actionable in this context. *Stringer*, 151 S.W.3d at 791 (referencing *Willgruber*, 920 S.W.2d at 64-67, where the Court held that Kroger was not entitled to a directed verdict on the Plaintiff's outrage claim because Kroger engaged in "a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees").

Assuming, for the sake of argument, that the Defendants terminated the Plaintiff because she filed an inquiry regarding whether she received her veterans preference points in an application for a job with a third-party, the conduct alleged in the complaint cannot be considered "'a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community.'" *Id.* (quoting *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984)). The Plaintiff's allegations simply do not support a claim for the tort of outrage. Therefore, the Plaintiff's claim against Defendants LBLA and Verdi for outrageous conduct and for conspiracy to commit the tort of outrage must be dismissed.

## CONCLUSION

For the foregoing reasons, all of the Plaintiff's claims against Defendants LBLA and Gaye Verdi (f/k/a/ Gaye Luber) are **DISMISSED** and the Defendants' Motion to Dismiss is **GRANTED**.

An appropriate order shall issue