UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:03CV-192-TBR

**PAT OSBORN**                                                                                                  **PLAINTIFF**

**v.**

**BARRY HALEY, individually**
**GAYE LUBER (n/k/a/ Gaye Verdi)**
**LAND BETWEEN THE LAKES ASSOCIATION, INC.**                    **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court upon the Defendant, Barry Haley's, Motion to Dismiss, (Docket #61). The Plaintiff, Pat Osborn, has responded (Docket #68), and the Defendant has replied (Docket #71). This matter is ripe for adjudication. For the following reasons, the Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The Plaintiff, Pat Osborn ("Osborn"), worked for the Defendant Land Between the Lakes Association, Inc., ("LBLA"), a private company which performs services for the United States Forest Service, as a volunteer coordinator between January 2001 and June 2002. While employed at LBLA, Osborn applied for a trainee position with the Forest Service. Osborn is a veteran, and as such was entitled to a five-point veteran-hiring preference when applying for federal jobs. Osborn did not receive the job.

The Defendant, Barry Haley ("Haley"), was the senior management representative of the local Forest Service office where Osborn sought employment, and was responsible for the Service's hiring process. At a meeting of LBLA employees on May 20, 2002, Haley announced the person who got the job that Osborn sought. Osborn questioned his failure to inform her before the meeting started, and made a joke at his expense. During the next week, Osborn's supervisor told her to

apologize to Haley; she refused.

On June 11, 2002, Osborn filed a complaint with the United States Department of Labor, asking the Department to investigate whether the Forest Service, in its hiring decision, had given appropriate consideration to the veterans' preference points to which she was entitled. The Department's investigator, Robert Kuenzli, spoke with Haley on June 17, 2002. During that conversation, Kuenzli disclosed that Osborn had filed a complaint. Kuenzli ultimately concluded that the hiring procedure had been handled correctly. He informed Osborn of this conclusion, and she then asked him to close her complaint.

That same day, LBLA's executive director, Defendant Gaye Verdi ("Verdi"), summoned Osborn to her office and asked that she apologize to Haley for "not being a good Forest Service partner." Osborn again refused. Two days later, Verdi discharged Osborn from her employment with LBLA.

In June 2003, Osborn filed suit, pro se, against Haley, Verdi, and LBLA in state court. She alleged that Haley tortiously interfered with her employment relationship with LBLA and conspired to cause her wrongful discharge. Specifically, she charged that Haley maliciously induced Verdi to fire her, and that Haley did so in retaliation for Osborn's Department of Labor complaint requesting a veterans' preference inquiry. She also alleged that Verdi discharged her in retaliation for filing the complaint.

In response, the United States Attorney invoked the Westfall Act, 28 U.S.C. §2679, and certified on behalf of the Attorney General that Haley had been acting within the scope of his employment at the time of the incident giving rise to Osborn's allegations. The United States then removed the suit to this Court and filed a Notice of Proposed Substitution for Haley, as well as a

motion to dismiss for failure to state a claim.

The Court declined to accept the notice of substitution, determined that the United States was not a proper party in this case, and remanded the case to state court. The United States appealed to the United States Court of Appeals for the Sixth Circuit, which vacated this Court's denial-of-substitution and remand orders. The case was then appealed to the United States Supreme Court, which affirmed the judgment of the Sixth Circuit.

Prior to the commencement of the appellate process, Defendants Verdi and LBLA had filed a Motion to Dismiss Osborn's claims against them, and the motion was fully briefed. However, their motion was stayed while the issue of the United States' substitution for Haley was appealed. Once the case was remanded back to this Court, Defendants Verdi and LBLA renewed their Motion to Dismiss. The Court dismissed Defendants Verdi and LBLA in an Order entered April 8, 2008. Haley then filed this motion to dismiss the tort claims against him for failure to state a claim.

### STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citation and quotation marks omitted). "[A] plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* at 1965. Additionally, "the conclusory nature of particular allegations cannot alone justify dismissing a complaint." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (dismissal not appropriate although one essential element of the claim was pled in a conclusory manner).

## DISCUSSION

The Plaintiff's complaint sets forth the following claims against Defendant Haley: (1) conspiracy to effect a wrongful discharge (with the Defendant Verdi); (2) interference with employment relationship; (3) conspiracy to interfere with employment relationship (with the Defendant Verdi); (4) outrageous conduct; and (5) conspiracy to commit the tort of outrage (with the Defendant Verdi).

**1. Conspiracy to Effect a Wrongful Discharge**

The Plaintiff alleges that she was terminated from her employment at LBLA because she requested a Department of Labor inquiry into whether or not her status as a veteran was properly considered when she applied for a position with a third-party, the United States Forest Service. She does not claim that her veteran status was improperly considered or that she was improperly denied the Forest Service job; instead, her claims center on the Defendants' reaction to the fact that she made an inquiry at all. Haley has moved to dismiss the Plaintiff's claims against him arising from this termination, arguing that her claims are not actionable under Kentucky law.

The Plaintiff was employed by LBLA as an at-will employee. Under Kentucky law, the "terminable-at-will" doctrine provides that "'an employer may discharge his at-will employee for

good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985) (quoting *Firestone Textile Co. Div. v. Meadows, Ky.*, 666 S.W.2d 730, 731 (Ky. 1984)). There are three limitations to the terminable-at-will doctrine in Kentucky, allowing a terminated at-will plaintiff to bring a wrongful discharge action against his or her former employer. *Id.* at 401.

> These three limitations or exceptions are:
>
> (1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law; (2) That policy must be evidenced by a constitutional or statutory provision; (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.*; *see also Firestone*, 666 S.W.3d at 732.

Further, there are "only two situations . . . where 'grounds for discharging an employee are so contrary to public policy as to be actionable' absent 'explicit legislative statements prohibiting the discharge.'" *Id.* at 402 (adopting the position of the Michigan Supreme Court in *Suchodolski, v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711-12 (Mich. 1981)). They are: (1) where the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of his or her employment; and (2) where the alleged reason for the discharge was the employee's exercise of a right conferred by well-established statute. *Id.* (quoting *Suchodolski*, 316 N.W.2d at 711-12). Any statute used to support a wrongful termination claim must be directed at providing statutory protection to the plaintiff in her employment situation, and "the concept of employment-related nexus is critical." *Id.*

In addition, "this public policy exception has been found not to apply to public policy enunciated in federal law." *Clark v. Sanofi-Synthelabo, Inc.*, 489 F.Supp.2d 759, 771 (W.D. Ky.

5

2007) (citing *Shrout v. TFE Group*, 161 S.W.3d 351, 354 (Ky. Ct. App. 2005)). The "underpinning" of a wrongful discharge claim is KRS 446.070, which "extends a right of action only for the violation of a Kentucky statute or a constitutional provision. The protection does not extend to the violation of a federal regulation." *Shrout*, 161 S.W.3d at 355. Further, the wrongful discharge exception to the terminable-at-will doctrine does not apply if the statute that creates the public policy exception also provides the civil remedy and/or the structure for pursuing the claim; the aggrieved party is limited to that remedy. *Grzyb*, 700 S.W.2d at 401 (citing *Trembath v. St. Regis Paper Co.*, 753 F.2d 603 (7th Cir. 1985); *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir. 1984); *McCluney v. Jos. Schlitz Brewing Co.*, 489 F. Supp. 24 (E.D. Wis. 1980)); see *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 591 (W. D. Ky. 2004).

As noted above, absent an explicit legislative statement prohibiting the discharge, only two situations exist where an employee in Kentucky may maintain a wrongful discharge action against her former employer. *Grzyb*, 700 S.W.2d at 402. One of these situations involves the discharge of the employee for her refusal to violate a law in the course of employment, which is clearly not implicated here as the Plaintiff has made no such arguments or pointed to any evidence supporting such a claim. *Id.* The other situation is where the alleged reason for the discharge was the employee's exercise of a right conferred by well-established statute, if that statute is directed at providing statutory protection to the employee in her employment situation. *Id.*

Therefore, the Plaintiff may only maintain her claim against Haley if she can establish that the reason for her termination was her exercise of a right conferred by a well-established Kentucky statute or constitutional provision directed at providing protection to an employee in her employment situation. *Clark*, 489 F.Supp.2d at 771.

The Plaintiff cited no Kentucky statutes or constitutional provisions in her complaint or in her response to Haley's Motion. However, in an attempt to save her claims, in her response to Defendants Verdi and LBLA's Motion to Dismiss, the Plaintiff cited KRS § 18A.150 and KRS § 40.310, claiming they show "a well-defined public policy in Kentucky that veterans be allowed to enforce all claims, privileges and rights to which they are entitled under federal, state, and local laws." KRS Chapter 18A sets forth Kentucky's merit system for state employment. KRS § 18A.010 (2008). KRS § 18A.005 provides the method in which veterans preference points must be added to the state-employment entrance examination scores for different categories of veterans. This provision has no bearing on an individual applying for a federal government position.

Even assuming *arguendo* that KRS § 18A.010 evinces a well-defined Kentucky public policy that veterans should be properly awarded their preference points, the Plaintiff has not alleged that the Forest Service failed to award her the proper preference points. Instead, she alleges that she was terminated in retaliation for filing an inquiry with the Department of Labor. Chapter 18A has no provisions establishing a right to file a complaint alleging that preference points were inappropriately applied to the a person's state examination for state employment.

Thus, not only does it make little sense to discuss a Kentucky statute that could not have possibly had any affect on the Plaintiff's employment application for a federal government position, the Plaintiff has no claim at all that her veterans preference points were improperly awarded. There is no right embodied in KRS § 18A.010 directed at providing protection to an employee in the Plaintiff's employment situation. *Clark*, 489 F.Supp.2d at 771.

KRS § 40.310 sets forth the duties of the Kentucky Department of Veterans Affairs. KRS § 40.310 (2008). This section is entitled "Duties of Department of Veterans Affairs" and, as the title

7

implies, charges the Department with its various duties in the state of Kentucky. It provides no rights to individual veterans. Therefore, the Plaintiff cannot use KRS § 40.310 to establish a claim that she was terminated for exercising a right directed at providing protection to an employee in her employment situation. *Clark*, 489 F.Supp.2d at 771.

The Plaintiff, in response to Haley's Motion, states that Haley is subject to "our nation's veterans' Preference Laws, "Prohibited Personnel Practices", and the Memorandum of Understanding agreement between the U.S. Forest Services and Land Between the Lakes Association." These documents, however, are not well established Kentucky statutes or constitutional provisions, nor do they confer a right to such cause of action for wrongful discharge.

Even if the Plaintiff were able to establish that she was terminated for exercising a right conferred by a well-established Kentucky statute or constitutional provision directed at providing protection to an employee in her employment situation, the elements of conspiracy have not been met in this case. "A conspiracy is a corrupt or unlawful combination or agreement between two or more persons to do by concerted action an unlawful act, or to do a lawful act by unlawful means." *McDonald v. Goodman*, 239 S.W.2d 97, 100 (Ky.1951). One cannot conspire to effect a wrongful discharge when the act to be performed is not a wrongful discharge; there is no conspiracy when there is no unlawful act, or agreement to perform a lawful act by unlawful means.

For these reasons, the Plaintiff's claim of conspiracy to effect a wrongful discharge must be dismissed because it does not fit within Kentucky's narrow wrongful discharge exception to the terminable-at-will doctrine.

**2. Intentional Interference with Employment Relationship and Conspiracy to Interfere with Employment Relationship**

The Plaintiff alleges that Haley "wrongfully and maliciously induced, persuaded, or coerced defendant Gaye [Verdi] to discharge plaintiff from her job with LBLA in retaliation." The Plaintiff also alleges that Defendant Haley, along with the defendant Verdi, "conspired to interfere with plaintiff's employment relationship with LBLA and bring about plaintiff's discharge."

While there are multiple elements to a claim of tortious interference, to recover for tortious interference with employment, "a plaintiff must [first] prove the existence of a valid contract." *Smith v. Caterpillar, Inc.*, 2007 U.S. Dist. LEXIS 1532, at *10 (E. D. Ky. Jan. 8, 2007) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)). However, at-will employments have no such contracts. *Id.* The Plaintiff asserts that an oral employment contract existed at the time of Haley's alleged interference. Kentucky law states that a party can only alter the state of an employment at-will with a clear statement of their intention to do so. *See Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489, 492 (Ky.1983) (stating "parties may enter into a contract of employment terminable only pursuant to its express terms-as "for cause"-by clearly stating their intention to do so . . . "). There does not appear to be any evidence stating the intention of either party to alter the state of employment from at-will. Haley cannot be held liable for either interference with employment relationship nor conspiring to interfere with the Plaintiff's employment if the Plaintiff did not have a definable employment contract. However, this is the pleading stage and the Court believes further discovery is necessary to fully evaluate this claim. The Court will allow the claims for intentional interference with the employment relationship and conspiracy to interfere with the employment relationship to go forward at this time.

**3. Outrageous Conduct and Conspiracy to Commit the Tort of Outrage**

The Plaintiff claims that Haley's conduct towards her was outrageous and caused her severe emotional distress. Kentucky courts have "set a high threshold for outrage claims," *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004), and in Kentucky, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Kentucky, Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

A prima facie case of outrage requires that the Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer*, 151 S.W.3d at 788 (citing *Seitz,* 796 S.W.2d at 2-3). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (citing Restatement (Second) of Torts § 46(1) cmt. h (1965)).

Kentucky courts have refused to entertain a claim of outrage in many cases that alleged much more serious conduct than that alleged by the Plaintiff, who simply claims that she was terminated for filing an inquiry regarding her veterans preference points with a third-party employer, the Department of Labor. The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996)

For example, Kentucky courts have found nothing to support a claim of outrage where the

10

defendant:

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiffs property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital"; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiffs wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife.

*Stringer*, 151 S.W.3d at 790-91 (internal citations omitted).

As previously discussed, the Plaintiff was an at-will employee, and could be terminated at any time "for good cause, for no cause, or for a cause that some might view as morally indefensible," subject to the aforementioned inapplicable wrongful discharge exception. *Grzyb*, 700 S.W.2d at 400. The Supreme Court of Kentucky has recognized "that an employer's conduct in connection with the termination of an employee can constitute outrageous conduct." *Stringer*, 151 S.W.3d at 791 (referencing *Willgruber*, 920 S.W.2d at 64-67, where the Court held that Kroger was not entitled to a directed verdict on the Plaintiff's outrage claim because Kroger engaged in "a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees").

It does not appear Defendants' action of terminating the Plaintiff approaches the type of outrage claims that have been found actionable in this context. However, this is a motion to dismiss. Discovery may more fully develop the facts. At the time, the Court will allow, the Plaintiff's claims against Haley for outrageous conduct and for conspiracy to commit the tort of outrage to go forward.

11

## CONCLUSION

For the foregoing reasons, all of the Plaintiff's claims against Defendant Barry Haley are **DISMISSED** and the Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs claim for wrongful discharge is dismissed.

An appropriate order shall issue.