# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO: 5:03-CV-192-TBR

PAT OSBORN                                                                       PLAINTIFF

v.

BARRY HALEY, individually                                DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Supreme Court's remand.[1] In that opinion, the Supreme Court stated that a court must conduct a factual inquiry to determine whether a defendant was acting within the scope of his employment, as required for a substitution by the Westfall Act, rather than looking to the pleadings.

The parties have completed the briefs of the issue and a hearing was held on May 5, 2011.

## BACKGROUND

The Plaintiff, Pat Osborn ("Osborn"), worked for the Land Between the Lakes Association, Inc.,[2] ("LBLA") as a volunteer coordinator between January 2001 and June 2002. LBLA is a private company which performs services for the United States Forest Service. While employed at LBLA, Osborn applied for a trainee position with the Forest Service. Osborn is a veteran, and as such was entitled to a five-point veteran-hiring preference when applying for federal jobs. Osborn did not receive the Forest Service job.

The Defendant, Barry Haley ("Haley"), was the senior management representative of the local Forest Service office where Osborn sought employment, and was responsible for the Forest

---

[1] *Osborn v. Haley*, 549 U.S. 225 (2007).

[2] LBLA was originally a defendant in this action. LBLA has since been dismissed.

Service's hiring process. At a meeting of LBLA employees on May 20, 2002, Haley announced the recipient of the job that Osborn sought. Osborn was not selected. Osborn questioned his failure to inform her privately before the meeting started, and made a joke at Haley's expense (the 'Think Card' incident). During the next week, Osborn's supervisor discussed the incident with Osborn. Osborn's supervisor thought that it might be best for Osborn to apologize. Osborn alleges that she stated that Haley had taken no offense to the comment and that an apology was unnecessary.

Osborn later followed up on the prior comment by discussing it with LBLA's executive director, Gaye Luber ("Luber").[3] Osborn states that Luber initially informed her that she may want to apologize because she probably hurt Haley's feelings. Osborn alleges she once again stated that she did not think she hurt Haley's feelings, but would apologize if she did. Luber later informed Osborn that Haley did not required an apology and that he had 'earned' the aforementioned jest.[4]

On June 11, 2002, Osborn filed a complaint with the United States Department of Labor, asking the Department to investigate whether the Forest Service, in its hiring decision, had given appropriate consideration to the veterans' preference points to which Osborn was entitled. The Department's investigator, Robert Kuenzli, follow up on the complaint by calling Osborn on June 17, 2002. Osborn informed him of the basis of her complaint, and requested that Kuenzli not tell Haley who filed the complaint. Osborn told Kuenzli that she was worried she would be terminated if Haley was aware that she filed the complaint. Later that day, Kuenzli spoke with Haley. During that conversation, Kuenzli disclosed that Osborn had filed a complaint. Kuenzli concluded that the

---

[3]Luber was originally a defendant in this case. Luber has since been dismissed. Additionally, Luber's name has changed since this action was initiated. For consistency and ease of understanding, this Court will continue to use Luber to identify her.

[4]This portion of the background is taken from Plaintiff's Response Brief, DN 68, pg. 2.

hiring procedure had been handled correctly. He informed Osborn of this conclusion, and she then asked him to close her complaint.

That same day, Luber summoned Osborn to her office and asked that she apologize to Haley for "not being a good Forest Service partner." Osborn refused to apologize for exercising her right to have a veteran's preference inquiry. Osborn did offer to apologize for her previous joke at Haley's expense. Two days later, Luber discharged Osborn from her employment with LBLA.

In June 2003, Osborn filed suit, pro se, against Haley, Luber, and LBLA in state court. She alleged that Haley tortiously interfered with her employment relationship with LBLA and conspired to cause her wrongful discharge. Specifically, she charged that Haley maliciously induced Luber to fire her, and that Haley did so in retaliation for Osborn's Department of Labor complaint requesting a veterans' preference inquiry. She also alleged that Luber discharged her in retaliation for filing the complaint.

In response, the United States Attorney invoked the Westfall Act, 28 U.S.C. §2679, and certified on behalf of the Attorney General that Haley had been acting within the scope of his employment at the time of the incident giving rise to Osborn's allegations. The United States then removed the suit to this Court and filed a Notice of Proposed Substitution for Haley, as well as a motion to dismiss for failure to state a claim.

The Court declined to accept the notice of substitution, determined that the United States was not a proper party in this case, and remanded the case to state court. The United States appealed to the United States Court of Appeals for the Sixth Circuit, which vacated this Court's denial-of-substitution and remand orders. The case was then appealed to the United States Supreme Court, which affirmed the judgment of the Sixth Circuit.

3

Prior to the commencement of the appellate process, Defendants Luber and LBLA had filed a Motion to Dismiss Osborn's claims against them, and the motion was fully briefed. However, their motion was stayed while the issue of the United States' substitution for Haley was appealed. Once the case was remanded back to this Court, Defendants Luber and LBLA renewed their Motion to Dismiss. The Court dismissed Defendants Luber and LBLA in an Order entered April 8, 2008. Haley then filed a motion to dismiss the tort claims against him for failure to state a claim. In an order dated October 14, 2009, this Court dismissed the wrongful discharge count against Defendant Haley; however, the counts of tortious interference and outrage remained.

## HEARING TESTIMONY

The first person to testify at the hearing was Ms. Daphne Sewing. She stated that she saw Luber and Haley in intense conversations the day before Osborn was fired. She said they were together for a management meeting, which was not unusual, but that they spent a large amount of time talking outside of the meeting. This would have given Haley and Luber the opportunity to talk about Kuenzli's investigation. Sewing also confirmed that Haley referred to himself as the master of hardball who would not be intimidated.

Mr. Robert Kuenzli was the next witness at the hearing. Kuenzli stated that Haley was belligerent and uppity during the investigation. At some point, Haley learned that Osborn was the person who filed the claim and Haley stated he would not have hired Osborn if she was the only person who applied. Kuenzli also stated that he never spoke at any time with Luber.

The next witness was Mr. William Lisowsky, the highest ranking Forest Service member in the Land Between the Lakes area. Mr. Lisowsky stated that he would expect Haley and Luber to be in contact on a regular basis. He stated that it would be normal for them to have contact and

interact as needed for business purposes. He confirmed that the Forest Service was to have no influence on LBLA employment decisions, other than to provide feedback on LBLA employees that worked with the Forest Service on projects.

Perhaps most importantly, Mr. Lisowsky testified that the week prior to Osborn's termination Luber informed him that she might be terminating Osborn shortly. This conversation would have been prior to Kuenzli calling Haley. Luber made this call as a professional courtesy, because it had the potential to disrupt some planned activities. At the time of the phone call, Mr. Lisowsky seemed to think the decision was not final and that Luber was struggling with the decision.

Next, Osborn testified on her own behalf. Osborn stated that she had outstanding performance evaluations, had been personally praised by Mr. Lisowsky, and had recently received a $1.50/hour raise. Osborn stated that she had an excellent working relationship with her co-workers and Luber, and illustrated this by referring to an invitation she had received from Luber to attend a fish fry and a book that Luber had recently loaned her. Osborn testified that she spoke cordially with Luber on Monday, June 17. However, later that day, after Kuenzli called Osborn and Haley, Luber called Osborn into her office and stated that she would have to apologize or be fired. Osborn offered to apologize for the 'Think Card' incident but refused to apologize for filing the inquiry. She stated that Luber should not fire her or she would be in violation of the law. Luber excused her from her office. The next day, Osborn testified that Luber was absent from the office for the entire day. On Wednesday, Osborn was called into Luber's office and Luber told Osborn that she had to fire her unless she apologized. Osborn refused, and Luber terminated her. Osborn testified that Luber would not let her make a call to Kuenzli before escorting her from the building.

Ms. Gaye Luber was the final witness at the hearing. She testified that she was the executive

5

director of the LBLA and had hired Osborn. Shortly after hiring Osborn, Luber began to notice issues with her employment. Luber testified that Osborn had issues with absenteeism, being overly emotional at work (either by getting upset or getting angry), and needing help with all of her projects. She also stated that Osborn showed up late, would drop assignments she was supposed to complete, had multiple instances of insubordination towards both Luber and Haley, and 'sowed seeds of discontent' amongst the employees.

Luber stated that on Monday, June 17 she called Osborn into her office to discuss the aforementioned issues. After the meeting, Luber sent Osborn home early for the day. On Tuesday, Osborn failed to report to work and did not provide notice to anyone that she was not reporting. As a result, Luber terminated Osborn on Wednesday. Haley had no role in the decision, and Luber was unaware of the complaint at the time of the termination. Osborn testified that she had told Kuenzli that she thought Haley and Luber were an item. Luber denied that accusation and stated she had a business relationship with Haley and nothing else.

## STANDARD

In the current case, the Attorney General has certified that Defendant Haley was acting within the scope of his federal employment and therefore, under the Westfall Act, the United States is the appropriate defendant. Upon certification, "the United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231. The plaintiff must establish that the employee was acting outside the scope of his employment by a preponderance of the evidence. *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000).

**DISCUSSION**

Per the Supreme Court's ruling, this Court must make a factual determination as to whether Defendant Haley acted within the scope of his employment. This Court must resolve two issues: (1) whether Haley influenced the decision to terminate Osborn in any way; and (2) if so, whether Haley exercised his influence outside of the scope of his employment.

**1. Evidence Supporting Plaintiff**

The strongest evidence in Plaintiff's favor is temporal proximity. Investigator Robert Kuenzli spoke with Defendant Haley on June 17, 2002 about proper handling of veterans' preference in hiring. In that conversation, Kuenzli informed Haley that Osborn was the person who asked for the inquiry. Kuenzli testified that the conversation with Haley was contentious. Additionally, according to Plaintiff's testimony, on June 17, Plaintiff was called into Luber's office and asked to apologize to Haley for 'not being a good Forest Service employee.' Plaintiff refused to apologize for filing the veteran's preference inquiry, but offered to apologize for her prior statement about Defendant Haley's handling of Plaintiff's job application. Plaintiff states that Luber appeared ready to terminate her on that day, but hesitated after Plaintiff stated that such a termination would constitute retaliation. On June 18, 2002, Plaintiff's boss was absent from work for most of the day. Ms. Sewing verified that Luber was with Haley. On June 19, 2002, Plaintiff was terminated from her employment.

As additional circumstantial evidence that the termination must have resulted from someone outside of the LBLA, Plaintiff submitted an award from the LBLA received a few months prior to her termination and states that her performance reviews were always good. Plaintiff also states that she had a good working relationship with Luber and her other co-workers. Plaintiff had also

7

recently received a raise.

Plaintiff has also offered evidence that Plaintiff's claimed proffered reason for her termination is pretextual. Plaintiff claims she was told she was being fired because of the 'Think Card' comment she had made previously.[5] The comment was initially made on May 20, 2002 and Plaintiff met with her supervisor about the comment on May 28, 2002. Plaintiff also allegedly spoke with Luber about the comment on two separate occasions. No employment actions were taken at those times. Osborn suggests that the fact that concerns over the comment were revived only after Haley learned about the veterans' preference inquiry demonstrates the pretextual nature of the termination.

**2. Evidence Supporting Defendant**

Defendant's strongest evidence is testimony that Haley had no part of the employment decision. Both Haley and Luber state that Luber made the decision without input from Haley and with no knowledge of the investigation by Kuenzli. This was corroborated by Mr. Lisowsky's testimony that Luber informed him that she was considering terminating Osborn before the investigation even occurred. Luber stated that Osborn was terminated because Luber consistently had problems with Osborn missing work, being emotional at work, and needing assistance performing her job duties. She stated that Osborn had multiple incidents of insubordination and that Osborn 'sowed seeds of discontent' amongst some employees. She stated that Osborn was never asked to apologize prior to her termination and that the 'Think Card' incident was of little importance in the decision to terminate Osborn.

---

[5]Luber's testimony contradicts Plaintiff's proffered reason for termination. Luber states she gave Plaintiff a list of issues, none of which included the 'Think Card' incident.

**3. Scope of Employment**

Because Osborn has challenged the Westfall Act substitution, this Court must determine whether Haley acted within the scope of his employment. Scope of employment, especially when intentional torts are involved, is complex. *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51. "The focus is consistently on the purpose or motive of the employee." *Id.* "The master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." *Id.* at 52 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* 505 (5th Ed. 1984). Alternatively, "if the servant acts from purely personal motives which are in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment." *Id.* (internal quotations and edits omitted).

If Haley took no part in the employment decision of LBLA, he was clearly acting within the scope of his employment. Assuming, *arguendo*, that Haley did influence or attempt to influence an LBLA employment decision, it seems unlikely that Haley was acting within the scope of his employment. The United States Forest Service worked with the LBLA but was to take no part in the employment decisions of the LBLA.[6] Similarly, the only motivations set forth for Haley involving himself in Osborn's termination are purely personal - Osborn embarrassed him or caused him difficulty and he was not pleased. Given Osborn's experience and high praise, Haley likely cannot offer a business justification for encouraging her termination. As anticipated, then, this case turns on whether Osborn has proved, by a preponderance of the evidence, that Haley *in fact* required

---

[6]This is not seriously disputed, as it is confirmed by a *Memorandum of Understanding* and the testimony of Mr. Lisowsky.

or encouraged Osborn's termination.

While a close call, Plaintiff has failed to meet her burden of proof. Although there is strong temporal evidence of retaliation, Mr. Lisowsky's testimony tends to rebut the temporal proximity evidence. In addition, Luber provided multiple justifications for Osborn's termination. While there must certainly be some doubt on these reasons in light of Osborn's performance evaluations and raise, it does provide a basis for termination that does not involve Haley. Finally, both Luber and Haley testified or swore that Haley was not involved in Osborn's termination.

The Court does not doubt the sincere belief of Osborn that Haley must have influenced the employment decision. Ms. Osborn certainly appears to be a very sincere and considerate person. However, the Court is called upon to make a difficult factual conclusion in the face of some conflicting testimony. The parties agreed the Court should make the factual decisions. At the hearing the parties discussed that a ruling allowing substitution would also be dispositive of the remaining issues in the case. This has been a difficult decision for the Court, but the Court believes it is the decision best supported by direct evidence in the case.

In summary, Plaintiff has failed to demonstrate, by a preponderance of the evidence, that Defendant Haley influenced LBLA's employment decision and therefore acted outside of the scope of his employment.

## CONCLUSION

For the above reasons, Defendants Motion to Substitute is GRANTED. The factual determination that Haley was not involved in Ms. Osborn's termination is a binding factual determination. Accordingly, this Court grants, *sua sponte*, Summary Judgment for the Defendant

10

on Ms. Osborn's remaining claims.[7]  All other remaining motions are DISMISSED AS MOOT.

---

[7]At the hearing, there was some confusion as to the remaining claims.  A review of this Court's Memorandum Opinion dated October 15, 2009, indicates that the wrongful discharge claim against Haley was dismissed, and the intentional interference with the employment relationship, conspiracy to interfere with the employment relationship and outrage claims remained.  A factual determination that Haley played no part in Osborn's termination clearly makes both of the claims factually unsupported.